United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LUCIOUS OLIVER,<br><br>    Plaintiff,<br><br>  v.<br><br>Warden EVANS; et al.,<br><br>    Defendants.<br>_____ / | No. C 11-4052 SI (pr)<br><br>**ORDER OF SERVICE** |

## INTRODUCTION

James Lucious Oliver, an inmate at the Correctional Training Facility in Soledad, filed a *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

In his complaint, Oliver alleges that he has been falsely labeled a violent sex offender, a child molester, and a rapist. He alleges that warden Evans and deputy warden Neotti have violated his right to due process by classifying him as a serious and violent sex offender. Prison officials allegedly have falsified records that Oliver has a conviction for a violation of California Penal Code § 220 (assault with intent to commit mayhem, rape, sodomy, oral copulation, or other specified offense in the course of first degree burglary), and put that false information into his C-file.

Oliver further alleges that, in response to an inmate grievance he filed against her and in response to his choice not to socialize with homosexual prisoners, lieutenant Core retaliated against him by giving this false information – apparently referring to the sex offender

1    information – "to her prison yard 'snitch' to release to the prison inmate population, which he
2    did." Docket # 1 (Complaint), p. 4. As a result of being labeled a rapist and child molester,
3    Oliver had conflicts and altercations with other inmates.

4    Oliver further alleges that he alerted CCI Navarro and CCII Ramos to the falsehood in
5    his records, but they refused to correct it.

6    Oliver further alleges that correctional officer Meisner identified him as a "cho-mo," to
7    incite other inmates against him, which it did. Docket # 1, p. 6.

8    Lastly, Oliver alleges that he filed a complaint with Dean Flippo of the Monterey County
9    District Attorney's office, who declined to stop the problems Oliver was having.

## DISCUSSION

A.   Review of Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Generally, a prisoner has no federal due process right to a particular classification score. Interests protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See*

*Sandin v. Conner*, 515 U.S. 472, 484 (1995). Changes in conditions relating to classification and reclassification do not implicate the Due Process Clause itself. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Dagget*, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification). Deprivations authorized by state law that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e. give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. Although California has created a regulatory scheme from which a protected liberty interest in classification and custody designation might arise, the liberty in question generally is not protected by the Due Process Clause because the deprivation of a correct classification or custody designation cannot be characterized as one of "real substance," i.e., it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or "inevitably affect the duration of [a] sentence," *id.* at 487. However, labeling an inmate a sex offender might cause an atypical and significant hardship and therefore give rise to an interest protected by the Due Process Clause, *see Neal v. Shimoda*, 131 F.3d 818, 827-30 (9th Cir. 1997). Giving the *pro se* complaint the liberal construction to which it is entitled, it appears to state a cognizable claim as Oliver alleges that being classified as a sex offender has caused him to be classified as "maximum threat level" and, more importantly, has imposed on him "the obligation to register as such an offender before and after he is every (sic) released from prison." Docket # 1, pp. 3-4. Defendants Evans and Neotti have been adequately linked to this claim, as they allegedly "designated" Oliver as a sex offender. Docket # 1, p. 3. Defendants Navarro and Ramos also have been adequately linked to this claim, as they allegedly had a duty to correct the erroneous record and refused to do so. *See* Docket # 1, p. 5 (Navarro's action "was, and is in clear violation of her duty and the mandates of her job"); *id.* at 5-6 (Ramos "refused to act in this scope of her duty").

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular,

1 prison officials have a duty to protect prisoners from violence at the hands of other prisoners.
2 *Id.* at 833. A § 1983 claim may be stated under the Eighth Amendment against prison officials
3 where the officials acted with "deliberate indifference" to the threat of serious harm or injury to
4 an inmate by another prisoner that may result from spreading certain rumors about the prisoner.
5 *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading
6 rumor that prisoner is snitch may state claim for violation of right to be protected from violence
7 while in state custody). Liberally construed, the complaint states an Eighth Amendment claim
8 against defendants Core and Meisner, who allegedly endangered Oliver by disseminating
9 information to other inmates that Oliver was a sex offender, rapist, and/or child molester.

10 "Within the prison context, a viable claim of First Amendment retaliation entails five
11 basic elements: (1) An assertion that a state actor took some adverse action against an inmate
12 (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's
13 exercise of his First Amendment rights, and (5) the action did not reasonably advance a
14 legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)
15 (footnote omitted). Giving the *pro se* amended complaint the liberal construction to which it is
16 entitled, a claim is stated against defendant Core, who allegedly started the rumor that Oliver
17 was a child molester, rapist or sex offender in retaliation for his inmate appeal against her.

18 The claim against Dean Flippo, the district attorney, who declined to prosecute any prison
19 officials for their alleged misdeeds toward Oliver, must be dismissed. The prosecutor has
20 absolute immunity for a decision not to prosecute. *See Botello v. Gammick*, 413 F.3d 971, 977
21 (9th Cir. 2005); *Roe v. City and County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997) *See*

23 B.   Miscellaneous Matter

24 Oliver sent the court a letter complaining that, due to tampering by prison staff, his pauper
25 application "got lost and when my complaint was filed the clerk put my complaint as if I had a
26 attorney and I was given instruction as to electronic case filing. I do not have any at all access
27 to a on-line computer, this tampering has screwed my case up." Docket # 5. Oliver's speculation
28 is severely misguided. The pauper application arrived with the complaint, and the notice about

4

electronic case filing is generated by the court in *every* new case filed in this district.

**CONCLUSION**

1.  The amended complaint states cognizable claims for due process and Eighth Amendment violations, and for retaliation.  All other claims are dismissed.

2.  The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon the following individuals, all of whom apparently work at Salinas Valley State Prison:

    - Warden Evans
    - Chief Deputy Warden G. A. Neotti
    - CCII Ms. E. Ramos
    - CCI Ms. Navarro
    - Lieutenant Ms. Core
    - Correctional officer Ms. Meisner

3.  In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a.  No later than **April 20, 2012**, defendants must file and serve a motion for summary judgment or other dispositive motion.  If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due.

    b.  Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **May 25, 2012**.  Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

    > The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely

on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (*See Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).)

Plaintiff also should take note that a defendant may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, result in the termination of the action. The plaintiff must "develop a record" and present it in his opposition to dispute any "factual record" presented by a defendant's motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

   c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **June 15, 2012**.

  4. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

  5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

  6. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

7\. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: February 1, 2012

_____
SUSAN ILLSTON
United States District Judge